So I believe we now have the counsel for the next case, which is E. E. v. Norris School District. And I believe that it is Ms. Gutscher that is representing the school district. Is that correct? Please proceed. Yes, Your Honor. Thank you. May it please the court. Stephanie Gutscher with Schools Legal Service on behalf of Norris School District with me. I have my colleague, Ms. Melissa Allen. I will be presenting for 10 minutes and Ms. Allen will be presenting the rebuttal for five. Okay, are you going to try to save any? Oh, I see. She's going to do the rebuttal. Understood. Yes, thank you, Your Honor. I'd like to jump right in and get to what we're requesting of this court. We would like this court to remand this case back down to the Eastern District for consideration of the preliminary injunction factors. This case can best be summarized as a difference between whether or not the invocation of state put, whether the timing of the invocation of state put is legally significant or legally insignificant. In A.D. versus the State Department of Education, a Ninth Circuit court case that was cited by both parties, the Ninth Circuit found that state put is automatic and it's effective the date that the parent files for due process. If that is the case, then the ALJ was well within her authority to address state put in her order and therefore her order was valid, which means that when the district court considered her state put order, the district court should have reviewed the preliminary injunction factors. And in this case, the district court did not review any of the preliminary injunction factors. This reading that state put is automatic is also followed by the Eighth Circuit and the Third Circuit, so it's nothing new to the courts. So I'm following your argument. I don't know if I disagree with your argument, but it all turns on whether or not the ALJ's state put order was altruistic or not. And it seems to me it's just a little bit difficult. State put, as I understand it, is you state put in your current placement. And it seems like what the ALJ did was say your state put will be your next placement, what I've determined. And that seems to have pretty far-reaching consequences if the ALJ can just designate something as state put that isn't actually their current placement. We agree, Your Honor, which is why the alternative is to ask this court to adopt the same reasoning that has been adopted by the Supreme Court in the Burlington case, by the Sixth Circuit in the Tennessee case, by the First Circuit in the Doe, the Brooklyn case, and there was one more. Oh, and the Seventh Circuit. All of those courts found that a judge has judicial powers of equity to step in when a piece of the IDEA is not being implemented to further the main goal of the IDEA. There are two main goals of the IDEA, free and appropriate. But counsel, is there anything in the statutory text that supports the new exception to the state put provision that you're advocating for? If we read the statute to say that when a parent and an ALJ agree that a change is necessary, the ALJ is allowed to address state put. In this case... But with respect, isn't that an oxymoron? Doesn't state put mean you stay where you are? If I understand your argument and what the ALJ did was to say, we're going to take this new situation that didn't exist before and we're going to make that what we're going to do. That's not state put. That's a new situation, is it not? It is a new situation for this court. It is not a new situation for the other circuits that I listed that have found that when state put is construed to support the main purpose of the IDEA, it is appropriate to stray from state put. So you say to thwart the purpose of the IDEA, but the problem is that in some ways, if we all know, if we assume that we all know what would be a FAPE and what would be the best placement for a child, then of course keeping them in some placement that isn't that would thwart the purposes of IDEA. But it seems like state put is a statutory concept in IDEA which basically says while we're sorting all that out, a parent can opt to keep them in their position. So it's not, I mean, you're assuming that they're in a bad position and therefore need to be out is something that like, or that this is going to be better is just assumption. Let me see if I can ask you a question that I think in your briefing, your argument as you were saying, is that we should have this exception because we all agree that the current placement is not the best placement. And if we can, if we all agree that, how can that be the state put? The problem with that argument, I think, and this is what I'd like to have you respond to is you're assuming that where the school or the ALJ want to put the student is better than their current placing. Isn't it true that you could, that as a parent, you could be like, you know, I think my current placement is suboptimal, but where the school wants to put my child is worse. I want better. I'm asking for this, but where the school wants to put my child is worse. So I'm willing to take suboptimal for now, you know, until I can get my appeal and get better. You see what I'm saying? Couldn't that be true? Well, it has not ever been true in front of this circuit or any district court. No district court has considered the situation where a parent fights the status quo. And then after the parent has invalidated it under the ALJ's order, then fights to maintain the status quo that they fought so hard to change in the first place. So the council, you could see where if you're, if I was a parent and I wanted these, you know, the list of five things changed for my child. Right. And so I seek those and I go to the ALJ and ALJ gives me two of the things, but gives me, but doesn't give me three of the things. So the ALJ is agreeing and the yurt is agreeing that the current placement is, and I'm saying the current placement is suboptimal. ALJ is agreeing that the current placement is suboptimal, but the ALJ, by not giving me those three things or giving me something different than those three things, I actually think that the mix of all that is worse. And so I want to stay put until I can You see what I'm saying? Like, how does, how does like your rule not mess with that? I do see what you're saying, your honor. So let me, let me break it down a little bit, a little bit further. Had we not consolidated these cases and let's say your honor did bring such a case to say, I want to fix what's happening now. I want to, I want to change this small piece and, but in the interim I'm requesting stay put. That stay put would only last until the ALJ's order came out because the ALJ would order all of the parties back to the IEP table to develop a new IEP consistent with the ALJ's opinion. So it wouldn't be the case that the ALJ would say stay put is the former. It would be the case that the ALJ orders all the parties back to the IEP table to develop a new status quo. And what would be the stay put under those conditions? So the stay put would be the ALJ's order. How though? Just following up on my colleague's comment, I'm struggling with how, in this case, the 2020 IEP should control when the parent is working up to the system to be resolved one way or another, but you have to go to the new contested IEP, if you will, while you're waiting for a result. That seems, I don't get where you get to that in the statute. What am I missing? Well, in this, in the statute, it depends on how you read the statute. If you read the whole point, if you read the statute to say that the, when a parent and a district and the ALJ, in fact, when everybody agrees that a change is necessary and the ALJ provides a change, that is stay put. In this case, that's exactly what there is. Council, again, maybe I'm troubled by speaking English, but I think that stay put means you stay with what you've got. And when you have a change, that's not staying put, is it? Well, if you're not staying put, that is correct. And that's why we have these one of two options where, in this case, when the district court did not review the preliminary injunction factors, he skipped ahead and basically just appealed the ALJ's order instead of, he had no administrative record to review. But the statute, you don't need to get to that if the statute provides what because this court in Johnson held that when there is a pre-existing stay put order, you have to review the preliminary injunction factors. There is no... Yeah, but doesn't the stay put order have to be like, what if the stay put order has to be like legitimate, right? If it's ultra-virus, if it's just some ALJ saying the stay put order will be, your child will be shipped to the other side of the country or something, then that wouldn't be the stay put order, right? It has to be a legitimate stay put order. Well, and how do we say that it's illegitimate when, how did the district court find that it was not a legitimate order? The district court, the same way that Judge Smith is sort of getting at it, is that the ALJ sort of engaged in a bit of a semantic, you know, by saying that something was the stay put that wasn't actually leaving them the stay put. So saying it's just not actually the stay put. Counsel, do you want, you're into your rebuttal time. I don't know what you want to do, but if you want to save that for your co-counsel, you're welcome to do so. Yes, I will say this. Thank you. Very well. So I'm going to probably say this wrong and I apologize. Mr. Dukian, is that right? Yes, your honor, that's correct. Okay, please proceed. Good morning and may I please the court, I represent the escobillas in this case and I believe the court's questions this morning have hit the nail on the head. The north school district is asking this court to rewrite the IDA and to create an entirely new stay put exception that would make parents ineligible for relief in a broad category of cases in which, as Judge Van Dyke pointed out, they're challenging the validity of the existing placement and the court's questions have highlighted many of the problems. So can you address, can you, so the one thing I thought that your colleague on the other side said was there's all these, she says, I want this exception, it's not in the ninth circuit, but if I followed her correctly, she said it exists in the other, in four other circuits, but I didn't think that was right coming in, but can you tell me why we wouldn't be following the other circuits if we took her exception? Your honor, I believe that the district cases that are very close to this one, the main school administration case from the first circuit and the MM case from the eighth circuit, both of those courts held that when there is stay put, even in an admittedly inappropriate placement that everybody agrees is not appropriate for the child needs to be maintained is to stay put. The cases that the district says, like the Paul B case out of Tennessee, that does not say what the district says it says. If you look at the actual holding of Paul B, it requires two things for parents to invoke stay put, it requires the parents to be challenging the proposed new placement and that challenge has to be procedure, I'm sorry, substantive as opposed to procedural and that procedural substantive dichotomy is something that the district court in this case specifically recognized and here there can be no question that the parents have raised substantive challenges to the proposed new placement and so even under the Paul B case, the parents are entitled to stay put and under, there's not one case from any court, a circuit level court, a district court, a state court, anywhere in the country that has adopted this exception that the district is pushing for and I agree. Counsel, can I ask you, it's hard to be sympathetic towards the government and somebody used to represent government, that's something I remember, but there's a little bit of, one argument that they make is if they don't get the exception that they're asking for, that the problem is that students will be stuck in, like in this circumstance, this case illustrates, a student will be in a situation that nobody really thinks is optimal for that child and so probably means the child is maybe not getting a FAPE. Under that situation, the parents have arguably a statutory right, under your argument, to keep them in, but doesn't that put the school in a really bad position because now, say for one more year, the student sits in there and the school doesn't give them a FAPE and then you can sue them and get money or whatever else for something that you, they're saying you asked for. First you asked to be moved, but then you didn't like where they put you, so now you're asking to be put back there, but now you're going to sue us and say that we owe you money or something. You follow the argument? I understand the argument, your honor, I just don't think it's true and there's a safety valve built into the statehood statute to address that very concern, where the parents and the school district can sit down and agree to changes that would address the known defects with the current placement and it's important for the court to understand that what parents challenged of the original IEP had nothing to do with the placement, had nothing to do with the educational setting where EE was going to receive his services and his education. They were very discrete issues with the services and supports he was getting in the general education classroom and they wanted EE to receive more services and more support so he can be more successful in that setting and these are- So council, as I understand your argument, your response to that argument is you're not disclaiming that if they just went back and applied the quote-unquote statehood, the old, I'm getting the letters now, the IEP, is that right? If they just applied that IEP, the 2018 IEP that EE here would probably not get a fate and so if they just apply that, if what you're saying is the school district, you have the right to say the students should stay here but the school district better come and negotiate with me to address those issues or I will sue them for not providing a fate. Your honor, what we're asking for is the school district to keep EE in the general education classroom. Everybody now agrees that the goals of the original IEP were not appropriate, that he was not getting an appropriate behavior plan and he was not getting the needed supports and these are things the district court found could be addressed within the general education classroom and that's at ER 14 and 15 and we've been prepared at all times to sit down with the district and to address these issues within the general education classroom and so what the court, what this court held in the Anchorage school district versus MP case and what the first circuit case, state put is not an excuse for school districts to do nothing. If there are, they still have to review the IEP, they still have to review the goals and if there are changes that we, everybody now agrees need to be made and the district doesn't make those changes, then it's possible that down the road the district could be held responsible. Counsel, yeah, so I'm following you. I mean, I'm not sure that the district court judge on ER 14 and 15 says what you said he said. I don't know that he took the position that I've looked at it and the school district can provide a FAPE, you know, within the current placement. I think he said this parties can look at that. Like you basically, like what you said earlier, they have the option to do, but I mean, I think and we can ask on rebuttal that the school district, but I think their position is in order to provide a FAPE, it has to be in this other placement, right? And you guys just disagree about that. So if it turned, let's assume for a second that it turned out the school district was right. The only way they could provide a FAPE, you know, when you get done with all your appeals, right, and it's all said and done, the only way you could provide a FAPE was in this other placement. Well, doesn't that put the school district in it? Because you just got in the state book, got them in the old placement, but then, you know, when it's all said and done, it turns out that actually the student needed to be in the other one. Now, I think as you have the right under the statute to keep them in the old placement, but it does seem unfair that the school district would have to, you get to keep them there and then the school district has to pay for whatever damages were caused by keeping them there. If at the end of all this process, it turns out that it needed to be in the other place. Your Honor, I want to say three things in response to that. First, I don't think that there's any record support whatsoever if the district is going to make the argument that EE cannot get a FAPE and if these known defects with the IEP are addressed. So, I don't, I think if we assume that, it still comes back to the plain text of the statute and it's important for the court to understand that stay put is a one-way parent right. So, and just like you were saying, Judge Van Dyke, if there's a choice between two bad placements, in the end, the parent gets to decide the lesser of two evils in which placement they want the student to stay and whether or not down the road, the parents could get. I think I agree with you on but, but can a parent get to choose the lesser of two evils, what they think is lesser of two evils, but if in the future, you know, after all the process, it turns out that the other one wasn't as, wasn't evil, right? Some, the whole administrative process says the other one wasn't, was actually the, the better option, right? Then do the parents get, do the parents get damages for, because they chose to keep them in what they thought was lesser of two evils, but you see what I'm saying? It is a, there's a kind of a problem there. Your Honor, I don't, first of all, I don't think that's a question that the court needs to answer in this case, because we are not, we have not filed another case. We are not seeking damages or compensatory education for maintaining the stay put placement. But again, if there are known defects with the IEP, that everybody now agrees are problems, the fact that the goals are inappropriate, the fact that the supports and behavior plan are inappropriate, and the district does not fix those problems, it can't then use stay put as an excuse to not to escape liability. And the first circuit said that exactly. And so what, what is, what can you explain to me a little better? What is at issue in the litigation that's going on? In the district court? Yeah. Yes, Your Honor. There are two, there are cross appeals from the ALJ's decision. We've appealed the school district has appealed issue six, which was related to the COVID shutdown and whether the district provided a fate during the COVID shutdown. And then there are some civil rights claims as well. Okay. And the issue with respect to the placement is what? The ALJ held that the district could implement the new IEP, what we've been calling the new IEP from 2020 without the appealed it. And I just want to circle back and go back. Counsel, just so I can make sure I think what Judge Shorter may be asking and make sure I'm correct me if I this is a correct summary. Essentially, you want certain things, but you want them to be in the in the in the general classroom. And the district is saying we can provide those things. But to provide them I don't know for sure maybe they can answer this, whether they think it's not possible to do in the general classroom or just prohibitively expensive and not necessary or whatever, but they want to do it in a different place. You basically so your disagreement with the new with what the ALJ made that they appear is or made the IEP then the state what the new one is, is not really with most of the stuff just where it would happen, right? The placement is that accurate? That's exactly right. We never challenged the what are we challenged the what we never challenged the where that was the district's where they wanted to move to a classroom is a segregated classroom. And that's still up on appeal that's going to be litigated. But when this court is looking at state but I'm looking at the plain language of 1415 J and I did want to circle back to that because I think this case can be decided on the text alone. The statute has a singular focus on current educational placement. And in this case, that's very easy to determine because there's only ever been one placement in you know, Judge Van Dyke, you were asking if the state put order was ultra virus and whether it was even a state put order and it's not either. Because a the district admits and has conceded to this court that nobody raised that issue to the ALJ. And second, the ALJ doesn't, if we are going to call it it wasn't state put because she was changing placement in the middle of the case and Joshua a and many other cases from this court say that you cannot change the placement under state but until the appeal process is exhausted. The district was wrong when it said that when the ALJ issues in order it can change the state but that can only happen in two circumstances that are not present here. It can happen if the parents in the school district agree which clearly hasn't happened. And it can happen when the parents prevail and where under this LM case and Clovis case and then the regulations that it implies an agreement to change the placement but here the district prevail and where the district prevails on placement regardless of the merits regardless what the court finds at the end of the appeals process the state but has to the status quo has to be maintained. Counsel do you know of any cases where after the court has applied the state put pursuant to the statute that a parent has been able to successfully sue a school district for failure to relocate the student as a result of the state put order? No your honor I think the first first of all we're not asking we wouldn't be alleging that the school district didn't relocate EE when we what about provide a FAPE can I can I change Judge Smith's question have they ever had a successful suit where they said we want to stay put but then they sued for the time they were state put and for not getting a FAPE or something. In the main school administration case out of the first circuit the the court specifically addressed that question I don't know if it was just addressing it as a theoretical possibility or affirming an award but it specifically did say that state put is not a reason to deny compensatory education and vice versa the threat of compensatory education is not a reason to deny state put. Yes so to be clear to an answer to Judge Smith's question and I think this goes to what I was on it certainly left the door open that you could do that if I remember correctly the court said you know this is a concern that somebody's raised but that's not enough of a concern not to allow somebody to stay put and it didn't say it didn't say you wouldn't be able to do that right it just said you better go you better go to the negotiating table like I think I think that would be like they said the school better get to the negotiating table and make sure that that they receive a FAPE in their state put. That's exactly right your honor and and to be clear we've have been very clear with the school district that we're prepared to go to the negotiating table and to the extent we all now agree that there's no dispute as to some of these discrete and known problems with the original IEP that we can address them but in the end if you know if the school takes it it's our way or the highway approach the parents still get a right to pick the lesser of two evils under the state put doctrine and it's really their choice and not the school district's choice which placement to implement until the appeals are time unless the court has any other questions. Do either of my colleagues have additional questions for counsel? No. Very well thank you counsel so uh Ms. Allen you have a little bit of rebuttal time here please proceed. Thank you good morning may it please the court I want to jump right into what the purpose of statehood is and that is to prevent the unilateral change in placement by the district and if you look at the congressional history that is actually coded in the brookline case the senator that was in main sponsor of the legislation said in regards to placement we did feel however that the placement or change of placement should not be unnecessarily delayed while long and tedious administrative appeals were being exhausted thus the conference adopted a flexible approach to try to meet the needs of both the child and the state and what I wanted to point out in regards to this automatic language there are other circuits that have found it is not automatic it is not a literal translation of statehood you automatically get it the first as you know your opponent strongly disagrees with the characterization of the district that there are I think somebody said four circuit courts that go directly contrary to what the opponent is seeking here do you disagree with their characterization that that the cases you've cited are not on all fours or certainly not applicable I think that they're applicable in the sense that they say it is not automatic for example one case in the sixth district requires a two-pronged test to get to that automatic so it's not just a here's the suit here's the due process it's automatic statehood council is that the case that your opponent was talking about that requires that it's not just procedural has to be challenging that has to be correct yeah but I don't I don't know that that rule I see that there's some sort of test there but here you would say they're challenging the substance right like they're challenging where the student's going to be what I'm saying is that it's not automatic in the sense that you can have requirements prior to getting to that automatic state but and that is what some of the other circuits have recognized is that it can have whoever so counsel I hear your point would it be fair to say that no other circuit has has recognized the precise exception you're asking us to is that right yes okay just make it sure yes um the other thing that I wanted to really um get to is that what your honors have brought up is that the in simplest terms unfairness of this and what's going to happen if this uh uh proceeds in looking at the district court the district court um in the order stated that you could go back to the table and make it okay basically and what I would say is to give an update um as to this child is that we have gone back to the table and we have implemented and are on the road to agreeing to a lot of things uh services ot speech and things like that the the main issue that that order does not recognize is that the main issue is where these services occur and when you look at placement you cannot look at placement just as a physical location placement is the entire iep and the reason that this is important is because all of the services that they want in the general education classroom will not allow him to be in the general education classroom he's going to be pulled out even according to his witnesses at the due process hearing four to five hours a day if he is in the general ed classroom council I remember this from your brief since we're getting it can I ask you can I ask you a question something I'm genuinely wondering about is um is it is your position that you cannot provide a faith in the general classroom or just that it is um prohibitively expensive or it's not as good as um because obviously a faith I don't think has to be the goal you know a gold-plated education it just has to be fake right no I understand can you provide a faith our position is that we cannot provide faith in the general education classroom and the reason for that is because it will not be the least restrictive environment so if you can't provide a faith and somebody ultimately agrees with you at the end of all this and then my concern I think that I was talking about the opposing council has some merit is that let's say at the very end of this the the court says that yeah you're right you can't provide a faith in the general education classroom but you will have have been forced to put him in the general education classroom this whole time and so then could your could uh they sue and say well he didn't provide a faith because he was where we are here today um and the reason that we believe that that can happen is because how many times does a student or a parent sign an IEP agree to that IEP and then a year later or two years later they um sue us because we didn't provide faith so yeah I mean I hear you council I think that probably bothers me too I think Scalia would say you should take that up with congress or something like that right that you get that's just the way the statute's written but I would say though that the courts have found that judicial equity you can make this change because it is interfering with the purpose of IDEA council the problem is is that I hear you on that but the problem is we don't know right we don't know until until the whole process plays out and so um it seems to me if you're going to do something under equity a court would say well you don't let a parent put him in a placement and then basically punish you for doing what you put the statute I don't think the answer is what you're saying because we don't know right now what you'll end up being the best right and I think uh so it could be at the end of it they say they disagree with you that you could provide a faith uh that you could provide a faith in a general education classroom if I could just say two things about that the first thing is that um we have an administrative law judge that heard evidence over six days from students experts from districts experts heard all of that evidence and unbiasedly made a decision that that is the best placement for the child the judge ruled against us and everything else except for this one thing and so what we do have at this point in time you want us to take that over the parents view I mean that's but the statute doesn't say that well and then the other thing that I want to say is that when you look at this IEP if this court has us to continue to implement it in that placement please keep in mind that this IEP that was developed when he was in kindergarten he should be going into third grade it was developed when he had two months of school no preschool nothing it was developed when there was one assessment um we've done numerous since then and he should be going into third grade right now but he just completed first grade and cannot even do first grade academic work this child academically everybody can agree is not accessing his education he is not going anywhere in his to intervene at this point in time and at least at a minimum send it back to the district court for an evaluation of the injunctive factors because you are going to be placing this child in another another year he's already been one year he's already been actually three years this is a 2018 IEP or three years into about it we've let you go over quite a bit of your time uh do either of my colleagues have additional questions for counsel thank you counsel we thank all counsel for your argument in this case it's very helpful the case of ee versus norris school district is hereby submitted thank you your honors
judges: Schroeder, M. Smith, Vandyke